UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CR-80085-ALTMAN

UNITED STATE OF AMERICA,

       *Plaintiff,*

*v.*

ROBERT ANTON DUNN,

       *Defendant.*

_____/

## ORDER

Over the last year-and-a-half, Covid-19 has caused almost universal suffering. It has killed hundreds of thousands of Americans, forced millions of others to quarantine in their homes, and disrupted the operations of our most treasured institutions—including, as relevant here, our grand juries. For 18 full months now, our Court has (justifiably) tolled the speedy-trial rights of criminal defendants—many of them detained in pre-trial confinement—because jury proceedings seemed, in the circumstances, unfeasible. Many of these defendants went months without being indicted—not because of any negligence by the Government, but because, after having been sent home, our grand juries hadn't reconvened.

Our Defendant, Robert Dunn, is one of these—and he's understandably upset about it. In his motion to dismiss the indictment, he advances three arguments. *First*, he says that the pre-indictment delay violated the strictures of the Speedy Trial Act. *Second*, he claims that the delay infringed on his due-process rights under the Fifth Amendment. *Third*, he contends that, even if dismissal weren't required by the Speedy Trial Act or the Fifth Amendment, it's warranted under Rule 48(b) of the Federal Rules of Criminal Procedure.

The Government unsurprisingly disagrees. Conceding that it waited more than eight months to indict Dunn—during which time Dunn was being held in pre-trial detention—it blames this delay, not on its own gamesmanship or misfeasance, but on the drastic (if necessary) measures Congress and this Court took to stem the spread of Covid-19.

We're mindful of the rights of criminal defendants to a speedy trial. We're especially sympathetic to those defendants, like Dunn, who sat for months in pre-trial detention—afraid of the unseen disease that was swirling around them and left in the dark about when (or if) they'd ever have their day in court. But we cannot agree with Dunn's central thesis—that our Court's findings were insufficient to justify the long delays we, in our best efforts to protect the public from a deadly disease, imposed. And so, after careful review, we **DENY** Dunn's motion to dismiss.

### THE FACTS

On March 10, 2020, Robert Dunn was arrested on a criminal complaint, filed by the U.S. Attorney's Office, which alleged that he'd received and possessed child pornography. *See* First Criminal Complaint (Mar. 10, 2021) ("First Complaint") [ECF No. 1]. The next day, with Covid-19 infections skyrocketing, the World Health Organization declared the Covid-19 outbreak a global pandemic. *See* Proclamation No. 9994, 85 Fed. Reg. 16337 (Mar. 18, 2020) (noting the WHO's declaration). On March 13, 2020, two days after the WHO's declaration—and just three days after Dunn's arrest—the President of the United States declared a national emergency. *Id.* That same day, the Honorable K. Michael Moore, then-Chief Judge of our Court, entered the first in a series of administrative orders regarding the pandemic. That first order continued jury trials in the Southern District of Florida through March 30, 2020 "in order to protect the public health, and . . . to reduce the size of public gatherings and reduce necessary travel." Administrative Order 2020-18 ("AO 2020-18") [ECF No. 52-1] at 1. It also specified that "the time period of any continuance entered as a result of th[e] order shall be excluded under the Speedy Trial Act, . . . as the Court finds that the ends of

justice served by taking that action outweigh the interests of the parties and the public in a speedy trial." *Id.* at 1–2.

After Chief Judge Moore's first administrative order, Assistant Federal Public Defender M. Caroline McCrae—Dunn's counsel—agreed with the Government's request to continue the arraignment and preliminary hearing until April 6, 2020. *See* Government's Response in Opposition to Defendant's Motion to Dismiss Indictment and Vacate Continuances (the "Response") [ECF No. 52] at 2–3; United States Unopposed Motion to Continue Arraignment in 20-MJ-08122 ("First Motion to Continue in 20-MJ-08122") [ECF No. 6]. Consistent with that agreement, on March 16, 2020, the parties filed a joint motion to continue the arraignment due to "the unforeseen nature of the global coronavirus pandemic," which prevented the Government from presenting the indictment to the Grand Jury. *See* First Motion to Continue in 20-MJ-08122 at 1. Later that afternoon, U.S. Magistrate Judge Bruce E. Reinhart issued a paperless order that continued the arraignment "[i]n light of the current public health emergency" and found that "the interests of justice require the Court to take additional steps to protect the health and safety of parties, counsel, and court staff[.]" Magistrate Judge Order (Mar. 16, 2020) in 20-MJ-08122 [ECF No. 7] ("Mar. 16, 2020 Order in 20-MJ-08122"). Magistrate Judge Reinhart added that the ends of justice "also require that steps be taken to ensure that counsel and clients (particularly incarcerated clients) have meaningful consultation." *Id.* And, he concluded, "the ends of justice served by this continuance outweigh the interest of the parties and the public in a speedy trial." *Id.*

Over the next few days, AFPD McCrae and the Government discussed the possibility of continuing the arraignment again because, as before, the grand jury hadn't reconvened. *See* Response at 5. In fact, though the parties didn't know it then, no grand jury would convene in the West Palm Beach division of the Southern District of Florida until December of 2020. *See id.* at 4, 10.

Meanwhile, the Government was investigating a separate incident of child exploitation involving Dunn. Based on this other investigation, on March 19, 2020, the Government charged Dunn—again, by criminal complaint—with conspiracy to produce child pornography. *See* Response at 4; Second Criminal Complaint (Mar. 19, 2020) ("Second Complaint") [ECF No. 1].[1] The next day, Dunn made his initial appearance on this second complaint. *See* Response at 4; Paperless Minute Order (Mar. 20, 2021) [ECF No. 5]. To keep the cases together, the arraignment in the second case was set for April 6, 2020. *See* Response at 4.

On March 20, 2020, Chief Judge Moore entered a second administrative order concerning Covid-19. In this second order, the Chief continued all jury trials in the District "pending further Order from the Court." Administrative Order 2020-21 ("AO 2020-21") [ECF No. 52-2] at 1. The order specified that "[t]he time period of any continuance entered as a result of this Order shall be excluded under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), as the Court finds that the ends of justice served by taking that action outweigh the interests of the parties and the public in a speedy trial." *Id.* at 2. It also "incorporated by reference" its ends-of-justice determination "as a specific finding pursuant to 18 U.S.C. § 3161(h)(7)(A) in the record of each pending case where the Speedy Trial Act applies." *Id.* (citing *Zedner v. United States*, 547 U.S. 489, 506–07 (2006)). It then incorporated the findings and exclusion period from AO 2020-18. *Id.*

On March 23, 2020, Magistrate Judge Reinhart held a hearing on the second complaint. *See* Paperless Minute Entry (Mar. 23, 2020) in 20-MJ-08141 [ECF No. 6]. At that hearing, AFPD McCrae represented that, rather than waive his right to an indictment, Dunn had decided "to leave the arraignment set for April 6th." Pretrial Detention Hearing Tr. [ECF No. 52-3] at 13:25–14:1. AFPD McCrae added: "I anticipate that before that date I'll be contacting the Government either because

---

[1] Because the two criminal cases were consolidated, some of the ECF numbers are duplicated. We include the date and case number of the cases before the magistrate judges to indicate the specific entry we're citing to.

we have an agreement to proceed with an information, or because we're going to request more time before that arraignment date." *Id.* at 14:1–5.

On March 26, 2020, Chief Judge Moore entered a third administrative order—this time, about grand jury proceedings. *See generally* Administrative Order 2020-22 ("AO 2020-22") [ECF No. 52-4]. This third order continued all grand jury sessions in the Southern District of Florida until April 27, 2020; excluded from the speedy-trial clock "any continuance of grand jury sessions"; and found that "the ends of justice served by taking this action outweigh the interests of the parties and the public in a speedy trial because the continuance of grand jury sessions in this district renders it unreasonable to expect the return and filing of an indictment within the period set forth in 18 U.S.C. § 3161(b)." *Id.* at 1. The order then declared: "This Order and period of exclusion are incorporated by reference as a specific finding pursuant to 18 U.S.C. § 3161(h)(7)(A) in the record of each pending case where the Speedy Trial Act applies." *Id.* at 2 (citing *Zedner*, 547 U.S. at 506–07).

Because this order clarified that no grand juries would be empaneled until *at least* the end of April 2020, the Government and AFPD McCrae discussed the possibility of continuing the arraignment until May 20, 2020. *See* Response at 5. During these discussions, the Government also asked whether Dunn would waive his right to an indictment and allow the Government to proceed by information. *Id.* After consultation with Dunn, AFPD McCrae agreed to continue the preliminary hearing and the arraignment for 45 days—but she did not waive Dunn's right to have the charges brought before the grand jury. *Id.*

With that agreement in hand, on March 30, 2020, AFPD McCrae acceded to a second continuance of the preliminary hearing and arraignment—this time, for 45 days from April 6, 2020. *See* United States Second Unopposed Motion to Continue Arraignment in 20-MJ-08122 ("Second

Motion to Continue in 20-MJ-08122") [ECF No. 10] at 2.[2] In this Second Unopposed Motion to Continue, "[t]he parties agree[d] that the ends of justice are served by continuing the arraignment and outweigh the best interest of the public and the defendant in a speedy trial." *Id.* at 2. U.S. Magistrate Judge Dave Lee Brannon granted the motion in a paperless order the next day, "find[ing] that the time between 4/6/2020 and 5/21/2020 is speedy trial excusable in that the ends of justice are served by continuing the preliminary hearing/arraignment and outweigh the best interest of the public and the defendant in a speedy trial." Magistrate Judge Order (Mar. 31, 2020) in 20-MJ-08141 [ECF No. 11]. That order reset the preliminary hearing and the arraignment for May 21, 2020. *Id.*

On April 3, 2020, Chief Judge Moore entered a fourth administrative order. *See generally* Administrative Order 2020-24 ("AO 2020-24") [ECF No. 52-5]. This fourth order continued all jury trials and grand jury sessions until July 6, 2020. *Id.* at 1. Like the previous orders, this order excluded the continuance period from the Speedy Trial Act calculation and found "that the ends of justice served by taking that action outweigh the interests of the parties and the public in a speedy trial." *Id.* at 2. It also declared that "[t]his Order and period of exclusion are incorporated by reference as a specific finding pursuant to 18 U.S.C. § 3161(h)(7)(A) in the record of each pending case where the Speedy Trial Act applies." *Id.* (citing *Zedner*, 547 U.S. at 506–07). Finally, it said that "[t]he period of exclusion in this Court's prior Administrative Orders on this subject (2020-2[1] and 2020-18) are likewise incorporated by reference as a specific finding pursuant to 18 U.S.C. § 3161(h)(7)(A) in the record of each pending case where the Speedy Trial Act applies." *Id.*

Over the next few weeks, the case moved along. The Government turned over its discovery, *see* Response at 7, and (on May 20, 2020) the parties appeared at a preliminary hearing—where Magistrate Judge Reinhart found, with respect to both cases, that the Government had met its burden

---

[2] That same day, the Government also submitted an unopposed motion to continue the arraignment in the second case. *See* United States Unopposed Motion to Continue Arraignment in 20-MJ-08141 [ECF No. 8].

of establishing probable cause. *See* Order Following Preliminary Hearing (May 20, 2020) in 20-MJ-08122 [ECF No. 15] at 2. In his order, Magistrate Judge Reinhart reiterated that, pursuant to Chief Judge Moore's most recent administrative order, the period through July 6, 2020 "is excluded under the Speedy Trial Act[.]" *Id.*

Over the next two months, Chief Judge Moore issued two more administrative orders. The first of these—entered on May 29, 2020—extended the exclusion period and continued grand jury proceedings through August 31, 2020. *See* Administrative Order 2020-33 ("AO 2020-33") [ECF No. 52-6]. The second—entered on June 26, 2020—tolled the exclusion window and pushed grand jury sessions back through October 13, 2020. *See* Administrative Order 2020-41 ("AO 2020-41") [ECF No. 52-7]. Like the previous administrative order, each of these orders declared that "[t]his Order and period of exclusion are incorporated by reference as a specific finding pursuant to 18 U.S.C. § 3161(h)(7)(A) in the record of each pending case where the Speedy Trial Act applies." AO 2020-33 at 3 (citing *Zedner*, 547 U.S. at 506–07); AO 2020-41 at 3 (same). They also held that "[t]he period of exclusion in this Court's prior Administrative Orders on this subject (2020-24, 2020-21, and 2020-18) are likewise incorporated by reference as a specific finding pursuant to 18 U.S.C. § 3161(h)(7)(A) in the record of each pending case where the Speedy Trial Act applies." AO 2020-33 at 3; AO 2020-41 at 3 ("The period of exclusion in this Court's prior Administrative Orders on this subject (2020-33, 2020-24, 2020-21 and 2020-18) are likewise incorporated by reference as a specific finding pursuant to 18 U.S.C. § 3161(h)(7)(A) in the record of each pending case where the Speedy Trial Act applies.").

On July 6, 2020, U.S. Magistrate Judge William Matthewman set Dunn's arraignment on both cases for October 21, 2020. *See* Magistrate Judge Order (July 6, 2020) in 20-MJ-08122 [ECF No. 16] ("July 16, 2020 Order in 20-MJ-08122"); Magistrate Judge Order (July 6, 2020) in 20-MJ-08141 [ECF No. 27] ("July 6, 2020 Order in 20-MJ-08141"). In doing so, Magistrate Judge Matthewman said that "pursuant to the CARES Act and the administrative orders that [Chief Judge Moore] entered . . . the

Court finds that the speedy trial period is tolled." Arraignment Hearing Tr. [ECF. 52-8] at 7:10–12. He also found "that the necessity due to the coronavirus pandemic to extend the speedy trial period, toll the speedy trial period is necessary is necessary in the interests of justice and outweighs any interest of the Defendant or the public in a speedy trial." *Id.* at 7:13–17. Magistrate Judge Matthewman then asked Dunn whether he understood that grand juries had been suspended until October and that the Government hoped to obtain an indictment by the time of the arraignment, which had been set for October 21, 2020. *Id.* at 7:19–8:7. Dunn answered that he did understand. *Id.* at 8:8. In a paperless minute order he entered after the hearing, Magistrate Judge Matthewman "found the time between 7/6/2020 and 10/21/2020 excludable and that the ends of justice served by granting th[e] continuance outweigh the interest of the defendant and the public in a speedy trial for the reasons stated on the record." July 6, 2020 Order in 20-MJ-08141.

A month later—on August 11, 2020—Chief Judge Moore entered his seventh administrative order, extending the exclusion period (again) and continuing grand jury proceedings through January 4, 2021. *See* Administrative Order 2020-53 ("AO 2020-53") [ECF No. 52-9]. Like the previous orders, this seventh order determined that, "[a]lthough the Speedy Trial Act requires an information or indictment charging an individual with the commission of an offense to be filed within thirty (30) days from the date on which such individual was arrested or served with a summons in connection with such charges, the period of any continuance of grand jury sessions shall be excluded under the Speedy Trial Act[.]" *Id.* at 3–4. It also found "that the ends of justice served by taking this action outweigh the interests of the parties and the public in a speedy trial because the continuance of grand jury sessions in this district renders it unreasonable to expect the return and filing of an indictment within the period set forth in 18 U.S.C. § 3161(b)." *Id.* at 4 (citing *Zedner*, 547 U.S. at 506–07). It then said: "This Order and period of exclusion are incorporated by reference as a specific finding pursuant to 18 U.S.C. § 3161(h)(7)(A) in the record of each pending case where the Speedy Trial Act applies." *Id.*

On October 20, 2020, AFPD McCrea moved—unopposed—to continue the arraignment again. *See* Defendant's Unopposed Motion to Continue Arraignment in 20-MJ-08122 [ECF No. 19] ("Defendant's Motion to Continue in 20-MJ-08122"). In the motion, AFPD McCrae observed that, "because the coronavirus pandemic has prevented grand juries from convening in this district," the arraignment "has been periodically continued." *Id.* at 1. She also specifically asked that the time between her motion and the arraignment "be excluded from the speedy trial calculation, because the ends of justice served by granting th[e] continuance outweigh the interest of the defendant and the public in a speedy trial." *Id.* at 2. Magistrate Judge Reinhart granted the motion in a paperless order later that day, finding that "[t]he period between October 20, 2020 through January 20, 2021 is excluded from the speedy trial calculation, because the ends of justice served by this delay outweigh the interests of the defendant and of the public in a speedy trial." Magistrate Judge Order (Oct. 20, 2020) in 20-MJ-08122 [ECF No. 20] ("Oct. 20, 2020 Order in 20-MJ-08122"); Magistrate Judge Order (Oct. 20, 2020) in 20-MJ-08141 [ECF No. 31] ("Oct. 20, 2020 Order in 20-MJ-08141") (same).

That same day, Chief Judge Moore entered his eighth administrative order, extending the period of exclusion through April 5, 2021 and continuing grand juries until November 16, 2020. *See* Administrative Order 2020-76 ("AO 2020-76") [ECF No. 52-10] at 2–3. That eighth order likewise found that "the ends of justice served by [the continuances] outweigh the interests of the parties and the public in a speedy trial." *Id.* at 2. The order also said: "This Order and period of exclusion are incorporated by reference as a specific finding pursuant to 18 U.S.C. § 3161(h)(7)(A) in the record of each pending case where the Speedy Trial Act applies." *Id.* at 3 (citing *Zedner*, 547 U.S. at 506–07). Finally, it declared: "The period of exclusion in this Court's prior Administrative Orders on this subject (2020-53, 2020-41, 2020-33, 2020-24, 2020-21 and 2020-18) are likewise incorporated by reference as a specific finding pursuant to 18 U.S.C. § 3161(h)(7)(A) in the record of each pending case where the Speedy Trial Act applies." *Id.*

On December 1, 2020—the first day on which the grand jury reconvened in the West Palm Beach division—the Government obtained an indictment against Dunn that incorporated the charges from both complaints. *See* Indictment [ECF No. 33]. Four weeks later, on December 29, 2020, this Court issued its first trial order.[3] *See* First Trial Order [ECF No. 35]. In that order, we emphasized "the right of criminal defendants to a speedy and public trial under the Sixth Amendment—and the particular application of that right in cases involving defendants who are detained pending trial." *Id.* at 1. We specifically recognized the difficulties Covid-19 had presented:

> [T]he Covid-19 pandemic has caused the local jails—including the FDC—to "lock down," which, in turn has made it difficult for defense lawyers to meet with their clients, confer with the Government, or prepare their cases for trial. The pandemic has also impelled millions of Americans to quarantine themselves in their homes—or, less drastically, to remove themselves only sparingly—which, the Court finds, will make jury trials unfeasible for the foreseeable future.

*Id.* We therefore found that, under 18 U.S.C. § 3161(h)(7), "the ends of justice served by setting the trial date beyond the 70 days contemplated in the Speedy Trial Act outweigh the best interests of the public and the Defendant in a speedy trial," *id.*, and determined that, "under Section 3161(h)(7)(B)(i), failure to extend the trial period would result in a miscarriage of justice because a jury trial is unfeasible during this pandemic," and that, under 3161(h)(7)(B)(v), "failure to extend the trial period would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence," *id.* at 1–2 (cleaned up).

Two weeks after we issued our trial order, Dunn filed his *pro se* Motion to Dismiss the Indictment with Prejudice. *See generally* Motion. Since Dunn was already represented by AFPD McCrae,

---

[3] We recognize that our trial orders extended only the speedy-*trial*—rather than the grand jury— period. In this way, those orders really had no effect on the timeliness of Dunn's indictment. But we mention them here anyway because they exemplify our view that, as a practical matter, the Covid-19 pandemic made the process of empaneling juries (whether grand or petit) unfeasible and dangerous. And, while it's true that these orders post-date the Indictment, the Supreme Court in *Zedner* made clear that the ends-of-justice "findings must be put on the record by the time a district court rules on a defendant's motion to dismiss." *Zedner*, 547 U.S. at 507. Since these trial orders were entered long *before* we ruled on Dunn's motion to dismiss, their findings guide our inquiry here.

he asked to proceed by hybrid representation—under the terms of which he would act *pro se* only for purposes of litigating the motion to dismiss. *See generally* Notice Regarding Status Conference [ECF No. 43]. With the understanding that Dunn wanted AFPD McCrae to represent him in all other facets of the case, we allowed Dunn to litigate his Motion *pro se. See* Hybrid Representation Order (Jan. 26, 2021) [ECF No. 48] ("Hybrid Representation Order").

Since the Motion was filed, the Speedy Trial Act's period of exclusion has been extended four more times. Chief Judge Moore issued three more administrative orders—in February, April, and June 2021—that collectively continued jury trials in this District through July 19, 2021. *See* S.D. Fla. Administrative Order 2021-12 (Feb. 10, 2021) ("AO 2021-12"); S.D. Fla. Administrative Order 2021-33 (Apr. 6, 2021) ("AO 2021-33"); S.D. Fla. Administrative Order 2021-50 (June 1, 2021) ("AO 2021-50"). Each of these orders concluded that "the ends of justice served" by extending the exclusion period "outweigh the interests of the parties and the public in a speedy trial." AO 2021-12 at 2; AO 2021-33 at 2 (same); AO 2021-50 at 2 (same). After Judge Cecilia M. Altonaga succeeded Judge Moore as Chief Judge, she entered another administrative order on July 8, 2021. *See generally* S.D. Fla. Administrative Order 2021-65 (July 8, 2021) ("AO 2021-65"). This twelfth administrative order continued jury trials through September 6, 2021 and excluded the period of that continuance from the Speedy Trial Act clock. *Id.* It also made clear that, "even though some criminal jury trials are resuming in limited fashion, the Court finds the ends of justice are served by extending again this period of exclusion and outweigh the interest of the parties and the public in a speedy trial." *Id.* at 2. Finally, it noted that more than 700 criminal cases were then awaiting jury trials in this District and that, "[g]iven the limited availability of Court and juror resources, and continued exigent circumstances created by the pandemic, it remains generally unreasonable to expect all defendants to be tried imminently." *Id.*

Since Dunn filed his Motion, this Court has likewise issued *two* more trial orders. *See* Second Trial Order [ECF No. 54]; Third Trial Order [ECF No. 62]. Like the first, these two trial orders

recognized the rights of criminal defendants—especially those in detention—to a speedy trial. *See* Second Trial Order at 1; Third Trial Order at 1. But they also noted the many difficulties criminal defense lawyers have faced in trying to prepare their cases for trial. *See* Second Trial Order at 1 ("[T]he Covid-19 pandemic has caused the local jails—including the FDC—to 'lock down,' which, in turn, has made it difficult for defense lawyers to meet with their clients, confer with the Government, or prepare their cases for trial. The pandemic has also impelled millions of Americans to quarantine themselves."); Third Trial Order at 1 (same). In both orders, we found "that the ends of justice served by th[ese] continuance[s] outweigh the best interest of the public and the Defendant in a speedy trial." Second Trial Order at 1; Third Trial Order at 1 (same). Specifically, we found that, under 3161(h)(7)(B)(i), "failure to extend the trial period would result in a miscarriage of justice because a jury trial is unfeasible during this pandemic," and that, under 3161(h)(7)(B)(v), "failure to extend the trial period would 'deny counsel for the defendant or attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.'" Second Trial Order at 1; Third Trial Order at 1 (same).

Meanwhile, the Covid-19 pandemic has continued to pound us. As of this writing, more than 42,000,000 Americans have been infected with Covid-19 and more than 686,000 have died from it. *See* United States COVID-19 Cases, Deaths, and Laboratory Testing (NAATS) by State, Territory, and Jurisdiction, available at https://covid.cdc.gov/covid-data-tracker/#cases_totalcases (last visited Sept. 30, 2021). And, despite the widespread availability of safe and effective vaccines, the level of community transmission in each of the nine counties that comprise the Southern District of Florida remains high. *See* U.S. Department of Health & Human Services, COVID-19 State Profile Report – Florida, at 6 (Sept. 24, 2021), available at https://healthdata.gov/Community/COVID-19-State-Profile-Report-Florida/ht94-9tjc (last visited Sept. 30, 2021).

### THE LAW

The Speedy Trial Act requires that "[a]ny information or indictment charging an individual with the commission of an offense [be] filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). Generally speaking, then, federal criminal trials must begin "within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). At the same time, "the Act recognizes that . . . there are valid reasons for greater delay." *Zedner*, 547 U.S. at 497. When a court is presented with such a reason, the Act allows the judge to exclude the period of justifiable delay from the speedy-trial computation. *Id.* Among the exclusions the Act permits are so-called "ends-of-justice" continuances. 18 U.S.C. § 3161(h)(7)(A). Under this exclusion, an information or indictment may be filed more than 30 days after the defendant was arrested (or the summons served) "on the basis of [the judge's] findings that the ends of justice served" by the continuance "outweigh the best interest of the public and the defendant in a speedy trial." *Id.* "Th[e] ends-of-justice continuance, the Supreme Court has noted, is the most open-ended type of exclusion recognized under the Act." *United States v. Mathurian*, 690 F.3d 1236, 1242 (11th Cir. 2012) (citing *Zedner*, 547 U.S. at 508).

The Act lists several factors, "among others," for the court to consider in deciding whether to grant an ends-of-justice continuance. 18 U.S.C. § 3161(h)(7)(B). These include: "[w]hether failure to grant [the] continuance . . . would be likely to make a continuation of such a proceeding impossible, or result in a miscarriage of justice"; "[w]hether the case is so unusual or complex . . . that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by [the Act]"; whether the delay in filing the indictment "occurs at a time such

13

that it is unreasonable to expect return and filing of the indictment within the period specified in [the Act]" or because the case is unusually complex; and whether the court's failure to grant the continuance would deny either side the "reasonable time necessary for effective preparation, taking into account the exercise of due diligence." *Id.* When granting an ends-of-justice continuance, the court must "set forth, in the record of the case . . . its reasons for finding the ends of justice served by the granting of [the] continuance." *Id.*

Under the Act, if the defendant has not been charged after 30 non-excusable days have passed, "the information or indictment shall be dismissed on the motion of the defendant." 18 U.S.C. § 3162(a)(2). In such a case, though, the dismissal may be with or without prejudice. *See Zedner*, 547 U.S. at 499 ("[I]f a meritorious and timely motion to dismiss is filed, the district court must dismiss the charges, though it may choose whether to dismiss with or without prejudice."). When the Speedy Trial Act does not mandate dismissal, "[t]he court *may* dismiss an indictment, information, or complaint if unnecessary delay occurs in . . . presenting a charge to a grand jury . . . or . . .bringing a defendant to trial." FED. R. CRIM. P. 48(b)(3) (emphasis added).

## ANALYSIS

Dunn asks us to dismiss the Indictment *with prejudice* because (he says) the Government's delay in prosecuting his case violates the Speedy Trial Act. *See* Motion at 3–16. He contends, in the alternative, that the Indictment should be dismissed either as a violation of his Fifth Amendment rights, *id.* at 17–19, or under Rule 48(b), *id.* at 19–22. We disagree.

### I.      The Speedy Trial Act

Boiled to its essence, Dunn's argument is that the extensions in this case didn't satisfy the requirements of a proper ends-of-justice continuance, because they were effectuated, not by case-specific exclusions, but by district-wide administrative orders. *See* Motion at 5 ("[T]here is no statutory basis for issuing an all-inclusive continuance of grand juries in all cases district-wide. . . . Furthermore,

there is no case law to support the proposition that a district court judge may grant Blanket Continuances of grand juries rather than in lieu of individual motions for continuance."). Dunn cites *Zedner* for the proposition that, when it comes to the Speedy Trial Act, "without on-the-record findings, there can be no exclusion." *Zedner*, 547 U.S. at 507. Here, Dunn is *partly* right: without on-the-record findings, an ends-of-justice continuance *does* violate the dictates of the Speedy Trial Act. Dunn runs aground, however, by ignoring two crucial facts.

*First*, the district-wide orders in this case *did* include specific "on-the-record findings" that, because of the raging pandemic, "the ends of justice served by [the continuance] outweigh the interests of the parties and the public in a speedy trial." AO 2020-18 at 2.[4] The orders then expressly applied those findings to every criminal case then pending in our District. *See* AO 2020-21 at 2 ("This Order and period of exclusion are incorporated by reference as a specific finding pursuant to 18 U.S.C. § 3161(h)(7)(A) in the record of each pending case where the Speedy Trial Act applies." (citing *Zedner*, 547 U.S. at 506–07)).[5] So, while Dunn is right to say that ends-of-justice orders without "on-the-record findings" will fail to toll the speedy-trial clock, he's wrong to suggest that our Court's administrative orders suffered from that deficiency.[6]

---

[4] *See also* AO 2020-21 at 2 (same); AO 2020-22 at 2 (same); AO 2020-24 at 2 (same); AO 2020-33 at 3 (same); AO 2020-41 at 3 (same); AO 2020-53 at 3 (same); AO 2020-76 at 3 (same); AO 2021-12 at 3 (same); AO 2021-33 at 3 (same); AO 2021-50 at 3 (same); AO 2021-65 at 2 (same).

[5] *See also* AO 2020-22 at 2 (same); AO 2020-24 at 2 (same); AO 2020-33 at 3 (same); AO 2020-41 at 3 (same); AO 2020-53 at 3 (same); AO 2020-76 at 3 (same); AO 2021-12 at 3 (same); AO 2021-33 at 3 (same); AO 2021-50 at 3 (same); AO 2021-65 at 2 (same).

[6] In suggesting that the district-wide administrative orders weren't an appropriate means of excluding time from the speedy-trial clock, Dunn also says that Chief Judge Moore should have complied with the Judicial Emergency and Implementation procedures outlined in 18 U.S.C. § 3174(b). *See* Motion at 11–12. But that statute applies only to trials. *See* 18 U.S.C. § 3174(b) ("[T]he [judicial] council may, upon application by the chief judge of a district, grant a suspension of the time limits in section 3161(c)[.]"); 18 U.S.C. 3161(c) ("In any case in which a plea of not guilty is entered, *the trial of a defendant charged* in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs[.]" (emphasis added)). And Dunn challenges only the Government's delay in obtaining an indictment—not the Court's delay in bringing him to trial. *See, e.g.*, Motion at 3 ("Mr.

*Second*, even if we were to agree with Dunn that, as a matter of law, district-wide exclusion orders could *never* meet *Zedner*'s requirements—something *Zedner* didn't so much as suggest—Dunn's Motion would still fail in the circumstances presented here. Dunn, after all, repeatedly consented to the various motions the parties filed to continue the arraignment and preliminary hearing.[7] Dunn, it's true, resists this conclusion. *See* Reply at 3 ("[T]he Defendant does not recall having given his express consent to any of the continuances in question."). But the record—which suggests that AFPD McCrae was, at all times, actively consulting with Dunn—belies Dunn's position. During the March 23, 2020 hearing, for example, AFPD McCrae noted, in Dunn's presence, that—*after consulting with Dunn*—the defense had decided to leave the arraignment in place and (notably) had elected *not* to allow the Government to proceed by information. *See* Pretrial Detention Hearing Tr. at 13:24–14:5 ("I've had an opportunity to consult with Mr. Dunn. For now we're going to leave the arraignment set for April 6th, but I anticipate that before that date I'll be contacting the Government either because we have an agreement to proceed with an information, or because we're going to request more time before

---

Dunn's Constitutional Right under the Sixth Amendment as codified by Title 18 U.S.C. § 3161(b) has been violated because the Government has failed to indict within the thirty days of his arrest as prescribed by the statutory time limit set forth by 3161(b)."); *id.* at 3–16 (challenging the Government's failure to comply with the time limits in 18 U.S.C. § 3161(b), which requires that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days."). Since 18 U.S.C. § 3174(b) doesn't apply to grand jury delays, it simply isn't relevant here.

[7] *See* First Motion to Continue in 20-MJ-08122 at 1 ("The government has corresponded with assistant federal public defender, M. Caroline McCrae, who, on behalf of the defendant, has no objection to the government's request to continue the arraignment until April 6, 2020."); Second Motion to Continue in 20-MJ-08122 at 1 ("Originally set for March 24, 2020, the parties agreed to reset the arraignment until April 6, 2020 due to the unforeseen nature of the global coronavirus pandemic."); *id.* at 2 ("The government corresponded with assistant federal public defender, M. Caroline M. McCrae, who, on behalf of the defendant, agrees that arraignment and the preliminary hearing should both be reset to May 21, 2020."); Defendant's Motion to Continue in 20-MJ-08122 at 2 ("[T]he defendant, Robert Dunn, requests that the arraignment that is currently scheduled in this case be continued for 90 days."); Defendant's Unopposed Motion to Continue Arraignment in 20-MJ-08141 [ECF No. 30] at 2 (same).

that arraignment date."). The record doesn't show that Dunn objected to any part of this. *See generally id.* And, when Magistrate Judge Matthewman warned Dunn about the impact that the suspension of grand juries would have on his case, he answered that he understood. *See* Arraignment Hearing Tr. 7:19–8:8. To our knowledge, Dunn has *never* suggested that McCrae acted improperly in seeking or consenting to the various continuances. *See generally* Docket. And, in fact, when Dunn sought to represent himself for purposes of this Motion, he expressed no dissatisfaction with AFPD McCrae's representation. To the contrary, he specifically asked for AFPD McCrae to continue to represent him in every other facet of this litigation. *See* Notice Regarding Status Conference at 2 ("Mr. Dunn has indicated he wishes to be allowed to proceed in a hybrid fashion so that he may represent himself with respect to speedy trial issues, but the undersigned would continue to represent him in all other matters."). This would be an odd request for Dunn to make if, in fact, AFPD McCrae had consistently misrepresented his intentions and acted against his wishes.

Of course, none of this *really* matters because, as *Zedner* explained, "a defendant may not prospectively waive the application of the Act." 547 U.S. at 503. The question we must answer here, then, is *not* whether Dunn agreed to waive his rights under the Act, but whether the magistrate judges who ruled on his (and the Government's) repeated continuance requests "'se[t] forth, in the record of the case, either orally or in writing, [their] reasons' for finding that the ends of justice are served and [that] they outweigh other interests." *Id.* at 506 (quoting 18 U.S.C. § 3161(h)(8)(A)). And the fact is that they did: in granting each of the parties' various motions to continue, in fact, the magistrate judges made specific ends-of-justice findings *on the record*[8]—precisely as *Zedner* requires.

---

[8] *See, e.g.*, Mar. 19, 2020 Order in 20-MJ-08122 ("[T]he Court finds that the ends of justice served by this continuance outweigh the interests of the parties and the public in a speedy trial."); Mar. 31, 2020 Order in 20-MJ-08122 ("The Courts finds that the time between 4/6/2020 and 5/21/2020 is speedy trial excludable in that the ends of justice are served by continuing the preliminary hearing/arraignment and outweigh the best interest of the public and the defendant in a speedy trial."); Mar. 31, 2020 Order in 20-MJ-08141 (same); July 6, 2020 Order in 20-MJ-08122 ("The Court found the time between 7/6/2020 and 10/21/2020 excludable and that the ends of justice served by granting

Our review of those proceedings leaves us with no doubt about the magistrate judges' reasons for granting these continuances. Time and again, the magistrate judges cited the ongoing "pandemic," which they sometimes characterized as a "public health emergency," as justification for their decisions. *See, e.g.*, Mar. 16, 2020 Order in 20-MJ-08122 ("In light of the current public health emergency, the interests of justice require the Court to take additional steps to protect the health and safety of parties, counsel, and court staff; they also require that steps be taken to ensure that counsel and clients (particularly incarcerated clients) have meaningful consultation."); Arraignment Hearing Tr. at 3:17 (mentioning "the COVID-19 pandemic increasing situation" as a basis for the continuance). As the magistrate judges implied, the continuances were necessary to protect the health and safety of lawyers, jurors, and court staff. They were also an important way of protecting the rights of the accused—who, given the shutdowns at local jails, had no way of meeting (or adequately consulting) with their lawyers. Let's not forget: by the time these continuances were granted, the pandemic had killed hundreds of thousands of Americans and was spreading rapidly through the local population; the Centers for Disease Control had announced—and the scientific community had agreed—that the virus spreads most easily when people congregate in poorly ventilated *indoor* spaces, *see* Scientific Brief: SARS-CoV-2 Transmission, https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/sars-cov-2-transmission.html (last visited Sept. 30, 2021); and, as a result, courts across the country had taken the extraordinary step of continuing all jury proceedings until the pandemic could be brought more firmly under control, *see* Court Orders and Updates During COVID-19 Pandemic, https://www.uscourts.gov/about-federal-courts/court-website-links/court-orders-and-updates-during-covid19-pandemic#district (last visited Sept. 30, 2021) (collecting administrative orders

---

this continuance outweigh the interests of the defendant and the public in a speedy trial for the reasons as stated on the record."); Oct. 20, 2020 Order in 20-MJ-08141 ("The time period between October 20, 2020 through January 20, 2021 is excluded from the speedy trial calculations, because the ends of justice served by this delay outweigh the interests of the defendant and of the public in a speedy trial.").

concerning Covid-19 from district courts across the country). Remember, too, that, between the dates of Dunn's arrest and his indictment, no vaccine had yet been approved for use in the United States. *See* FDA Takes Key Action in Fight Against COVID-19 By Issuing Emergency Use Authorization for First COVID-19 Vaccine (Dec. 11, 2020), available at https://www.fda.gov/news-events/press-announcements/fda-takes-key-action-fight-against-covid-19-issuing-emergency-use-authorization-first-covid-19 (last visited Sept. 30, 2021). There's little doubt, in short, that, by referencing the ongoing "public health emergency," the magistrate judges were responding, as best they could, to each of these realities.

Nor were the chief and magistrate judges the only ones to make specific "on-the-record findings" in this case. Once Dunn was indicted, we issued *three* separate trial orders, each of which explicitly "f[ound], under 18 U.S.C. § 3161(h)(7), that the ends of justice served by setting a trial date beyond the 70 days contemplated in the Speedy Trial Act outweigh the best interests of the public and the Defendant in a speedy trial." First Trial Order at 1; *accord* Second Trial Order at 1 (same); Third Trial Order at 1 (same). Those orders also recognized that the pandemic had forced local jails to "lock down," which had made it difficult for defense lawyers to meet with their clients, confer with the Government, and prepare their cases for trial. *See* First Trial Order at 1; Second Trial Order at 1; Third Trial Order at 1. In these unprecedented circumstances, we said, the practice of aggregating jurors in enclosed spaces was simply "unfeasible." First Trial Order at 1; Second Trial Order at 1; Third Trial Order at 1.

Having made these specific findings, we then concluded *both* that "failure to extend the trial period would result in a miscarriage of justice" *and* that "failure to extend the trial period would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." First Trial Order at 1 (cleaned up); *accord* Second Trial Order at 1 (same); Third Trial Order at 1 (same). Again, although these orders

19

post-date the Indictment, they're relevant to our analysis because, as *Zedner* requires, they put our specific "findings" about the feasibility of calling jurors "on the record by the time [we] rule[d] on [Dunn's] motion to dismiss." *Zedner*, 547 U.S. at 507.

That's all plainly sufficient to satisfy the Speedy Trial Act, which (as we've said) excludes any "period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel . . . if the judge granted such a continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A).

In his Motion, Dunn devotes just eleven sentences to the facts of this case. *See* Motion at 1–2. Even in these eleven sentences, though, he cherry-picks the facts that suit his narrative and disregards the ones that don't. So, for instance, he points out that he was arrested on March 10, 2020, that his detention hearing was on March 16, 202, that he was denied bond, and that the Court granted various continuances, *see* Motion at 1–2—all things that are undisputed. But he conveniently ignores the most salient details. To list but one obvious example: he *never mentions* any of the 21 separate ends-of-justice findings that have been made *on the record* in his case—made (we note) by three different magistrate judges, two chief judges, and (of course) this Court. In the end, Dunn's Motion fails because we—the judges assigned to his case—have excluded from the speedy-trial computation almost[9] *every day* that passed between his arrest and his Indictment.[10]

---

[9] We say "almost" because, so far as we can tell, no order excluded the first six days after his arrest. *Compare* Paperless Minute Entry in 20-MJ-08122 [ECF No. 2] (showing an arrest date of March 10, 2020) *with* First Motion to Continue in 20-MJ-08122 (filed and granted on March 16, 2020).

[10] Because we disagree that dismissal is warranted, we needn't address Dunn's separate request that the Indictment be dismissed *with prejudice*. Motion at 1, 12 –16 ("[T]he Defendant . . . files this motion requesting the Honorable Court dismiss the indictment with prejudice[.]"); *see also* Reply at 3–9.

## II.      The Fifth Amendment

Dunn also asks us to dismiss the Indictment on the ground that (in his view) the Government violated his Fifth Amendment right to due process. *See* Motion at 17–19. Here, he argues that, "even if the nine-month delay in indicting the Defendant in the instant case does not violate the Speedy Trial Act, it does violate the Due Process Clause and thus, militates in favor of a dismissal with prejudice." *Id.* at 18. Again, we disagree.

Dunn bears "a very heavy burden . . . to show that pre-indictment delay has offended due process." *Stoner v. Graddick*, 751 F.2d 1535, 1540 (11th Cir. 1985); *see also United States v. Foxman*, 87 F.3d 1220, 1223 (11th Cir. 1996) ("[S]ubstantial prejudice from delay, standing alone, does not violate due process."). To prevail, he must demonstrate that the delay "(1) caused actual prejudice to the conduct of his defense and (2) was the product of deliberate action by the government designed to gain a tactical advantage." *United States v. Puett*, 735 F.2d 1331, 1334 (11th Cir. 1984). Dunn falls short at both elements.

*First*, Dunn hasn't shown any actual prejudice. "[T]he Supreme Court made it clear that when preindictment delay is asserted, actual prejudice and not merely 'the real possibility of prejudice inherent in any extended delay,' is a necessary element which must be shown before the restraints of due process will be applied to bar a prosecution[.]" *United States v. McGough*, 510 F.2d 598, 604 (5th Cir. 1975) (quoting *United States v. Marion*, 404 U.S. 307, 326 (1971)).

In trying to articulate the extent of his prejudice, Dunn speculates that "coercive incarceration of an indeterminate length . . . leads many defendants to accept a guilty burden plea." Motion at 14. This is precisely the kind of sweeping, generalized observation that cannot establish actual prejudice. Dunn, after all, *hasn't* pled guilty—despite the lengthy detention—and there's no indication that he's imminently going to change his mind. Even if we accept Dunn's premise, then—that detention *sometimes* coerces pleas—he's done nothing more than outline "the real *possibility* of prejudice inherent

21

in *any* extended delay[.]" *Marion*, 404 U.S. at 326 (emphases added). And that, as the Fifth Circuit has said, just isn't enough to show "actual prejudice." *McGough*, 510 F.2d at 604.

At any rate, the generally coercive effect of a prisoner's incarceration isn't enough to establish "actual prejudice." When a defendant relies on the nature of his incarceration to show prejudice, the Eleventh Circuit requires him to prove "that the conditions under which he was held or the length of his confinement rendered the delay unconstitutional." *United States v. Dunn*, 345 F.3d 1285, 1296 (11th Cir. 2003). Dunn never suggests that the conditions of *his* detention have been unusually extreme or difficult. *See* Motion at 17–19 (lacking any allegations about Dunn's detainment other than: "the Defendant has been detained the last nine months due to the Government's own negligence in filing the indictment against him within the established time limitations set forth in 18 U.S.C. § 3161(b)"). And, while it's true that he'd been detained for (almost) nine months when he was indicted, the Eleventh Circuit has held that far longer periods of detention were insufficient to establish "actual prejudice." *Dunn*, 345 F.3d at 1297 ("Although appellant says that he spent an excessive amount of time in a pretrial detention facility, he has not demonstrated in any way that the conditions under which he was held or the length of his confinement [of nearly 18 months] rendered the delay a constitutional violation. . . . [H]e has not demonstrated actual prejudice, and his constitutional speedy trial claim is unmeritorious."); *United States v. Young*, 906 F.2d 615, 620 (11th Cir. 1990) ("[Defendant's] conclusory allegations of prejudice are insufficient to establish actual prejudice. Furthermore, [Defendant] fails to make a colorable showing that the government deliberately caused the [almost three-year] delay [between his arrest and indictment].").

In his Reply—but not in his Motion—Dunn beefs up his prejudice claim by outlining some of the personal hardships he's had to endure. He says that his detention has caused him to miss out on certain job-advancement opportunities; he bemoans his recent hypertension and diabetes diagnoses; he complains about memory loss, depression, and post-traumatic stress; and he points to

the death of his brother-in-law. *See* Reply at 6–7. But it's well-settled that arguments not advanced in a party's initial motion—and raised only in reply—are waived. *See In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived."). That's reason enough to ignore these contentions—which, after all, the Government never had the chance to refute. Even these new arguments, though, miss their mark.

Starting with job advancement, Dunn never describes *with any degree of specificity* what these opportunities were, *see* Motion at 6 ("His employment and advancement into management at Jimmy Johns has been disrupted[.]"), and he fails to show that these promotions would have been available to him *but for* the pre-indictment delay. Dunn, recall, has been charged with some very serious crimes. And we don't think it's a stretch to say that employers aren't generally looking to promote the small percentage of Americans who have been accused of receiving—much less *producing*—child pornography. Without any evidence that a specific employer was willing to look the other way at these charges and advance Dunn's career in spite of them, we have to characterize this claim as the kind of "generalized allegation[]" that's "not sufficient to constitute proof of substantial prejudice." *Russo*, 796 F.2d at 1451; *see also Young*, 906 F.2d at 620 (noting that "conclusory allegations of prejudice are insufficient to establish actual prejudice").

Keep in mind, too, that Dunn's been charged with crimes that carry very lengthy prison terms. *See* 18 U.S.C. § 2251(e) ("Any individual who violates, or attempts or conspires to violate, this section shall be imprisoned not less than 15 years nor more than 30 years, but if such a person has one prior conviction under [a statute that criminalizes sexual abuse or child pornography], such person shall be . . . imprisoned for not less than 25 years nor more than 50 years[.]"); 18 U.S.C. § 2260A ("Whoever, being required by Federal or other law to register as a sex offender, commits a felony offense involving a minor under [one of various provisions] shall be sentenced to a term of imprisonment of 10 years

in addition to the imprisonment imposed for the offense under that provision."); 18 U.S.C. § 2252 ("Whoever violates, or attempts or conspires to violate [the statute,] shall be fined under this title and imprisoned not less than 5 years and not more than 20 years, but if such person has a prior conviction under [a law that criminalizes sexual abuse, child pornography, or sex trafficking] such person shall be . . . imprisoned for not less than 15 years nor more than 40 years."); *see also* First Criminal Complaint–Affidavit in Support of an Arrest Warrant ("Complaint Affidavit") [ECF No. 1] ¶ 7 (noting Dunn's "criminal history show[ing] that he is a registered sex offender with prior convictions for cruelty toward a child in 2006 (adjudication withheld), using a computer to lure a child in 2014, and attempted lewd or lascivious battery in 2014"). There's thus a not-insubstantial likelihood that, even without the pandemic, his incarceration in this case would have caused him to miss the job-placement opportunities he's identified.

Dunn's reliance on his memory loss, depression, PTSD, hypertension, and diabetes fails for similar reasons. For starters, Dunn has produced no evidence for these diagnoses—no doctor's note or testimonial, no incident report or medical record. Indeed, aside from their appearance in his Reply, the only reference to these ailments in the record is a brief colloquy between Dunn and this Court during the hearing on Dunn's request for hybrid representation. At that hearing—which took place long *after* his Motion was filed—Dunn admitted that he was no longer suffering from manic depression or PTSD and explained that he had last been diagnosed with these conditions *six years ago. See* Hybrid Representation Hearing Minute Entry [ECF No. 47]. We'll thus take Dunn at his word and reject his new claims to depression and PTSD.

Even if he is suffering from these ailments now, he makes no effort to show that he wasn't enduring them *before* his arrest. And, even if he had, he'd still fail to establish actual prejudice because, given the lengthy prison terms he's facing, he (very likely) would've served a protracted prison term anyway—a prison term that may well have caused him some not-insignificant psychological trauma.

As for his alleged hypertension and diabetes, Dunn never even suggests that these were caused by his prolonged detention. *See* Reply at 6 ("[T]he Defendant has recently been diagnosed with hypertension (high blood pressure) as well as diabetes due to his incarceration."). Where a defendant's "motion contains only[] conclusory allegation[s] that he is prejudiced" because of "deteriorate[ing]" health, "such general allegations are insufficient to support a motion to dismiss[ ] based upon a Fifth Amendment due process violation." *United States v. Schoeneman*, 893 F.Supp. 820, 822 (N.D. Ill. 1995).

The death of Dunn's brother-in-law likewise doesn't qualify as actual prejudice. To show that he was prejudiced by this passing, Dunn argues that his brother-in-law was "a potential witness to his defense who the Defendant had confided in some of the events prior to being incarcerated." Reply at 6. But, when a potential witness dies before trial, a "blanket statement [that] gives no indication as to the content and relevance of the lost testimony, and how its absence impair[s] [the] defense," isn't enough to establish actual prejudice. *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009); *see also United States v. Campbell*, 2021 WL 1546132, at *8 (S.D. Ohio Apr. 20, 2021) (relying on *Harris* to hold that pretrial delay wasn't enough to demonstrate actual prejudice when a potential witness died before he could testify). Dunn, in short, has failed to show actual prejudice here.

Dunn also fails to establish the second prong of the Fifth Amendment test—which (as a reminder) requires him to prove that the delay "was the product of deliberate action by the government designed to gain a tactical advantage." *Puett*, 735 F.2d at 1334. In our case, the "record is devoid of any evidence that the government [delayed prosecution] for tactical reasons[.]" *Id.* at 1335. Indeed, Dunn offers nothing but speculation for his view that the Government purposefully delayed his Indictment. He suggests, for instance, that the delay gave the Government more time to consider the evidence, develop a trial strategy, and build the case against him. *See* Motion at 14 ("[T]he Government . . . obtained a tactical advantage by continuing to gather evidence at their leisure."). But the Government could have done all these things *before* they arrested him—and Dunn has *no evidence*

that the prosecutors felt they needed *more* time afterwards, *see generally* Motion; Reply. In either event, any delay would have benefitted Dunn *at least* as much as it helped the Government. Unlike the Government, after all, Dunn's lawyer came into the case cold on the day she was appointed. Whereas the Government had been investigating Dunn for months, *see* Complaint Affidavit ¶ 4, 10, 17 (noting that the Task Force Agent first reviewed an Internet Crimes Against Children tip about Dunn on September 3, 2019; that the Twelfth Judicial Circuit of Florida approved a search warrant for Dunn's Google account on October 18, 2019; and that a judge in the Middle District of Florida signed a search warrant for a second Google account on February 11, 2020)—accumulating evidence, devising a trial strategy, building its case—AFPD McCrae was necessarily playing from behind. If anything, then, the pre-indictment delay allowed AFPD McCrae to catch up to the Government, so to speak—an important reality the Eleventh Circuit itself has found significant. *See United States v. Williams*, 314 F.3d 552, 559 (11th Cir. 2002) ("[T]he district court was correct to find that [the defendant] benefitted from and contributed to the delay. For example, the continuances in December gave [the defendant] more time to consult with his attorneys in preparing his defense, and it was [the defendant] who, at least in one instance, asked that the preliminary examination be continued.").

Nor need we ignore the obvious here—that the Government didn't purposefully delay Dunn's case *at all*. Quite the opposite: the Government was forced to forego an indictment, for almost nine months, by circumstances entirely beyond its control—namely, the raging Covid-19 pandemic, which impelled this Court (and many others) to suspend grand jury proceedings until December of 2020. *Cf. United States*, 995 F.3d 683, 693 (9th Cir. 2021) ("[S]urely a global pandemic that has claimed more than half a million lives in this country . . . falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public health."). In fact, as soon as the grand jury in West Palm Beach reconvened, the Government sought and obtained the Indictment it had been

waiting for. Response at 10 (indicating that the Government indicted Dunn on the *first* available day, December 1, 2020).

"Tactical advantage is the touchstone of pre-indictment delay cases[.]" *United States v. Wetherland*, 636 F.3d 1315, 1324 (11th Cir. 2011). Since Dunn cannot show that the Government *deliberately* delayed his case *for the purpose of* gaining a tactical advantage, he "cannot prevail on [his] due process claim." *Id.*

### III.     Rule 48(b)

Lastly, Dunn invites us (*see* Motion at 19–22) to dismiss the Indictment under the discretionary authority of Rule 48(b), which provides, in pertinent part: "The court may dismiss an indictment . . . if unnecessary delay occurs in: (1) presenting a charge to a grand jury; (2) filing an information against a defendant; or (3) bringing a defendant to trial." FED. R. CRIM. P. 48(b). A court should "exercise this power 'with caution[ ] and only after a forewarning to prosecutors of the consequences.'" *United States v. Hattrup*, 763 F.2d 376, 377 (9th Cir. 1985) (quoting *United States v. Simmons*, 536 F.2d 827, 836 (9th Cir.), *cert denied*, 429 U.S. 854 (1976)). Indeed, dismissal under Rule 48(b) may be improper in "the absence of prosecutorial misconduct and demonstrable prejudice or substantial threat thereof[.]" *Id.* at 378. That's because Rule 48 relief "is a harsh sanction that should be used only when the defendant has suffered prejudice or there is a substantial threat of prejudice." *United States v. Dixon*, No. 20-CR-00006, 2021 WL 1841748, at *4 (W.D. Va. May 7, 2021) (refusing to dismiss an indictment for Covid-19 delays under Rule 48(b)). So, where—as here—a defendant merely "speculated that the delay in indictment will prejudice his defense," that "is not sufficient for the court to exercise its discretion to use the harsh sanction of dismissal with prejudice." *Id.* And, as we've discussed—*q.v.* Section II, *supra*—Dunn hasn't shown *either* (1) that the delay resulted from any Government misconduct (intentional or otherwise), *or* (2) that the delay has prejudiced him.

Ignoring Rule 48(b)'s requirements, Dunn identifies four things that, he says, the Government could (and should) have done, but didn't: (1) file an information; (2) voluntarily dismiss his case without prejudice; (3) let him out on bond; or (4) convene a grand jury by teleconference. *See* Motion at 20–21. Even assuming that these alternatives *could* justify dismissal under Rule 48(b)—as we've said, without a showing of misconduct *and* prejudice, they cannot—we'd decline Dunn's invitation to dismiss the Indictment.

Starting with the information. The Government did, of course, consider this option; in fact, it offered him this very thing, *see* Response at 5; Pretrial Detention Hearing Tr. at 13:24–14:5, and a magistrate judge questioned him about it, *see* Arraignment Hearing Tr. at 7:21–8:8. In response to these inquiries, however, AFPD McCrae made clear that her client was *not* interested in allowing the Government to proceed by information. *See* Pretrial Detention Hearing Tr. at 13:24–14:5 ("I've had an opportunity to consult with Mr. Dunn. For now we're going to leave the arraignment set for April 6th, but I anticipate that before that date I'll be contacting the Government either because we have an agreement to proceed with an information, or because we're going to request more time before that arraignment date."). Dunn cannot now blame the Government for failing to do something he himself prevented.

Nor did the Government have to dismiss Dunn's case or release him on bond. Dunn, remember, is a registered sex offender who's alleged to have received, possessed, and conspired to *produce* child pornography. From the Government's perspective, then, releasing Dunn into the community would have implicated some fairly serious public-safety concerns. As one magistrate judge who presided over a portion of this case explained, Dunn's "past pattern of committing crimes while on release [in other cases] creates a strong inference that [he] would continue to engage in criminal conduct if released." Pretrial Detention Order in 20-MJ-08122 [ECF No. 9] at 4–5 (citing 18 U.S.C. §

3142(e)(3)(A)). Nothing in Rule 48(b) required the Government to endanger the public by releasing Dunn back into the community.

Dunn's teleconferencing suggestion fares no better. Overseeing the grand jury, after all, is the Court's responsibility—not the Government's. *See In re Request for Access to Grand Jury Materials Grand Jury No. 81-1, Miami*, 833 F.2d 1438, 1444 (11th Cir. 1987) (distinguishing between the court's "functions in instructing and controlling grand juries" and the Government's duty to "submit[ ] evidence and make[ ] recommendations to the grand jury"); *see also Mistretta v. United States*, 488 U.S. 361, 389 n.16 (1989) ("Federal courts supervise grand juries[.]"). The Government thus had no discretion—even assuming such a thing possible—to order the grand jurors to appear by teleconference. And, needless to say, we cannot fault the Government for failing to do something it had no power to do in the first place.

### CONCLUSION

After careful review, the Court hereby **ORDERS and ADJUDGES** that the Motion to Dismiss [ECF No. 37] is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 30th day of September 2021.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record
        Robert Anton Dunn